Appeal No. 2021-2218

IN THE

# UNITED STATES COURT OF APPEALS
**FOR THE FEDERAL CIRCUIT**

GOOGLE LLC,
*Appellant*

v.

HAMMOND DEVELOPMENT INTERNATIONAL, INC.,
*Appellee*

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in No. IPR2020-00081

# REPLY BRIEF OF APPELLANT GOOGLE LLC


KEVIN D. RODKEY
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
271 17TH STREET NW, SUITE 1400
ATLANTA, GA 30363-6209
(404) 653-6400

DANIEL C. TUCKER
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
1875 EXPLORER STREET, SUITE 800
RESTON, VA 20190-6023
(571) 203-2700

ERIKA H. ARNER
SYDNEY R. KESTLE
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
901 NEW YORK AVENUE, NW
WASHINGTON, DC 20001-4413
(202) 408-4000

*Counsel for Appellant Google LLC*


April 11, 2022

## CERTIFICATE OF INTEREST

**Case Number** 2021-2218

**Short Case Caption** Google LLC v. Hammond Development International, Inc.

**Filing Party/Entity** Google LLC

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box.** Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: April 11, 2022

Signature: */s/ Erika H. Arner*

Name: Erika H. Arner

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. |
| ☐ None/Not Applicable | ☒ None/Not Applicable | ☐ None/Not Applicable |
| Google LLC | | XXVI Holdings Inc.; Alphabet Inc. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| John M. Mulcahy<br>Finnegan, Henderson, Farabow, Garrett & Dunner, LLC | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☐ None/Not Applicable ☐ Additional pages attached

| | |
|---|---|
| *Hammond Dev. Int'l, Inc. v. Google LLC*, No. 6:19-cv-00356 (W.D. Tex.) | *Hammond Dev. Int'l, Inc. v. Amazon.com Inc.*, No. 1:20-cv-00342 (W.D. Tex.) |

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☒ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |

## TABLE OF CONTENTS

ARGUMENT ....................................................................................................1

I. Claim 18 Is Invalid Based on Issue Preclusion ............................................3

A. The "plurality of application servers" limitations do not materially alter the question of patentability.........................................4

1. The "differences" between the claims are minor........................6

2. The Board's findings demonstrate that these "differences" were known in the art. .........................................7

3. Analogous case law strongly supports applying issue preclusion based on the Board's findings. ................................10

4. The '816 patent describes the claimed "applications" and "application servers" in a conventional manner. ...............13

B. Google applied the correct legal framework and addressed all claim limitations in showing that the claims are substantially similar.......................................................................15

II. Claim 18 Is Invalid Based on the Board's Undisputed Findings Regarding Substantially Similar Claim 1 in the Same IPR..........................18

III. Hammond Does Not Dispute That If Claim 18 Is Invalid, Then Claims 14-17 and 19 Are Also Invalid........................................................20

CONCLUSION ...............................................................................................22

## TABLE OF AUTHORITIES

**Page(s)**

### Federal Cases

*Bourns, Inc. v. United States*,
537 F.2d 486 (Ct. Cl. 1976)....................5, 12, 16

*Callaway Golf Co. v. Acushnet Co.*,
576 F.3d 1331 (Fed. Cir. 2009)....................20

*In re Freeman*,
30 F.3d 1459 (Fed. Cir. 1994)....................3

*In re Lee*,
277 F.3d 1338 (Fed. Cir. 2002)....................19

*Ohio Willow Wood Co. v. Alps S., LLC*,
735 F.3d 1333 (Fed. Cir. 2013)....................*passim*

*Sirona Dental Sys. GmbH v. Institut Straumann AG*,
892 F.3d 1349 (Fed. Cir. 2018)....................19

*Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*,
778 F.3d 1311 (Fed. Cir. 2015)....................5, 10, 11, 16

*Westwood Chem., Inc. v. United States*,
525 F.2d 1367 (Ct. Cl. 1975)....................12, 13, 16

### PTAB Cases

*SK Hynix Inc. v. Netlist, Inc.*,
No. IPR2017-00561, 2018 WL 3326674 (P.T.A.B. July 5, 2018)....................13

## ARGUMENT

Google's opening brief provided two independent reasons why the Court should reverse the Board's finding that claim 18 of the '816 patent is not unpatentable. First, claim 18 is unpatentable as a matter of issue preclusion because the Board previously held nearly identical claims were unpatentable in two other *inter partes* reviews ("IPRs") of related patents. Blue Br. at 25-34. Second, the Board's determination that claim 18 is not unpatentable is plainly inconsistent with its determinations in the same IPR invalidating another nearly identical claim. Blue Br. at 35-39.

Regarding Google's first reason for reversal, Hammond argues that issue preclusion should not apply because claim 18's base claim (claim 14) includes limitations directed to a "plurality of application servers," which are not recited in the unpatentable claims of the related '483 patent. Red Br. at 9-16. But the Board already determined that these limitations were known in the art, and the '816 patent itself describes them in a conventional manner. Under controlling case law, these known limitations cannot materially alter the question of patentability to defeat issue preclusion.

Hammond also argues that Google did not meet its burden of establishing issue preclusion because it did not address every limitation of the surviving claims in the '816 patent. Red Br. at 16-20. To the contrary, Google's brief included a chart

showing how "every limitation in claim 18 of the '816 patent has a counterpart in unpatentable claim 18 of the '483 patent." Blue Br. at 29 (citing *id.* at 12-14). This included all elements of base claim 14 of the '816 patent. Blue Br. at 12-14. Google's analysis was not "conclusory" either, Red Br. at 19—the chart itself demonstrates that the surviving and unpatentable claims are nearly identical, and Google addressed any minor differences, Blue Br. at 12-15, 29-31. Hammond, on the other hand, does not allege any other differences between the claims; instead, it repeats its failed argument about the "plurality of application servers" limitations. Google applied the right standard and reached the right results. Issue preclusion applies, and the Board's decision with respect to claims 14-19 should be reversed.

Regarding Google's second reason for reversal—internal inconsistency in the '816 patent decision—the Board's determination that the "request for processing service" limitations make claim 18 patentable cannot be reconciled with its findings that the same limitations in claim 1 of the same patent would have been obvious based on the same combination of prior art references. Hammond's arguments misunderstand and fail to address Google's position. For example, Hammond accuses Google of trying to change its grounds for claim 14 or ask the Court to "re-write" its petition. Red Br. at 21-22. But that is not Google's argument. Instead, Google maintains that the Board's final, unappealed findings regarding claim 1

should be applied equally to claim 18, which was challenged using overlapping prior art and the same rationale. The Board's failure to do so was reversible error.

Finally, Hammond does not dispute that, if claim 18 is invalid, then independent claim 14 and dependent claims 15-17 and 19 are also invalid, under the case law cited in Google's opening brief. Blue Br. at 39-44. While Hammond argues that Google's reliance on its case law is "misplaced" because claim 18 is not invalid in the first place, Red Br. at 23-24, Hammond does not dispute the case law's applicability if the Court agrees with Google that claim 18 is invalid. Likewise, Hammond does not argue that any of dependent claims 15-17 or 19 should survive if the Court agrees with Google that claims 14 and 18 are invalid. *See* Red Br. at 24.

## I. Claim 18 Is Invalid Based on Issue Preclusion

Google explained how all four requirements for issue preclusion/collateral estoppel are met. Blue Br. at 27-34 (citing *In re Freeman*, 30 F.3d 1459, 1465 (Fed. Cir. 1994) (identifying four issue preclusion requirements)); *see also id.* at 11-15. In response, Hammond challenges only the first requirement, arguing that collateral estoppel does not apply because the IPR proceedings do not present identical issues. Red Br. at 9-20. It does not dispute that the other three requirements of issue preclusion are met. *Id.* Moreover, Hammond argues that the claims do not present identical issues based only on the limitations directed to the "plurality of application

servers" recited in claim 14. It does not argue that any other limitations differentiate the claims. *Id.*

Both of Hammond's arguments about the identical-issues requirement fail. First, the "plurality of application servers" limitations, which Hammond points to as allegedly distinguishing the surviving claims from the unpatentable claims, were known in the art, as the Board's unchallenged findings and the patent itself demonstrate. *See infra* Section I.A. Second, contrary to Hammond's assertion, Google addressed each limitation of the surviving claims and explained how each limitation has counterparts in the unpatentable claims. *See infra* Section I.B.

### A. The "plurality of application servers" limitations do not materially alter the question of patentability.

Hammond argues that claim 14 of the '816 patent (from which claim 18 depends) differs from the unpatentable claims of the other adjudicated patents because it requires "***two*** distinct application servers that interact with the recited ***two*** distinct applications in a specific manner." Red. Br. at 10. Specifically, Hammond argues that the unpatentable claims do not include the following two limitations recited in claim 14 of the '816 patent: "a ***first*** one of the plurality of application servers configured to execute a ***first*** application" and a "***second*** one of the plurality of application servers . . . either (a) configured to receive a ***second*** application . . . or (b) configured to cause an execution of the ***second*** application." Red Br. at 10 (quoting Appx123). This, Hammond alleges, materially alters the question of

patentability, which prevents the Court from applying issue preclusion to claims 14 and 18. Red. Br. at 10 (citing *Ohio Willow Wood Co. v. Alps South, LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013)).

Hammond is wrong because the Board found that these limitations were known in the prior art, and issue preclusion applies where "the differences between the adjudicated and unadjudicated claims relate only to things known in the art . . . ." *Bourns, Inc. v. United States*, 537 F.2d 486, 493 (Ct. Cl. 1976). Hammond previously argued to the Board that these limitations were novel over the prior art. Appx860-861 (arguing that the prior art does not teach "Elements [14a]-[14d][1]"). But the Board disagreed and, crediting Google's expert, found that these minor differences would have been "obvious" and "desirable," and were "well known before the '816 patent and would have required only ordinary skill to implement." Appx81-84. These known differences therefore do not materially alter the question of patentability and cannot defeat a finding of issue preclusion. *Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311, 1319 (Fed. Cir. 2015).

---

[1] Elements [14c] and [14d] relate to the limitations that Hammond alleges materially alter the question of patentability. *See* Appx560.

### 1. The "differences" between the claims are minor.

Before turning to the Board's findings, it is important to assess the minor "differences" that Hammond identifies. Red Br. at 10. The table below shows the limitations of surviving claim 14 of the '816 patent (in the left column) compared with the corresponding limitations of unpatentable claim 10 of the '483 patent (in the right column), which Hammond alleges are different.

| **Excerpt from surviving '816 Patent Claim 14** | **Excerpt from unpatentable '483 Patent Claim 10** |
|---|---|
| [14a] ***a plurality of*** application servers; | ***one or more*** application servers . . .; |
| [14c] a ***first one*** of the plurality of application servers configured to execute ***a first application*** . . . ; | ***at least one*** of the one or more application servers adapted to execute ***an application*** . . .; |
| [14d] ***the second one*** of the plurality of servers either (a) configured to receive ***a second application*** from at least one repository having a database maintaining the second application over the second communication link or (b) configured to cause an execution of the second application via the second communication link; | ***the at least one*** application server is operable to receive over a second communication link ***an application*** from a repository having access to one or more applications maintained in a database coupled to the at least one repository, wherein the at least one application server is further operable to execute the received application . . . ; |

Appx123-124; Appx2578 (emphases added). As the table shows, the required functions—executing an application and receiving another application over a communication link—are identical in the two claims. The only "difference[]" is that the '816 patent claim requires a plurality of servers to perform the functions, while

the ’483 patent claim requires one or more. But as discussed below, that minor variation cannot defeat a finding of issue preclusion.

### 2. The Board’s findings demonstrate that these “differences” were known in the art.

The parties disputed this very difference before the Board, and the Board determined that it was known in the art. Specifically, the Board determined that the prior art disclosed a “plurality of application servers.” Blue Br. at 10, 14, 18, 30-31 & n.2 (citing Appx81-84). And while Hammond argues that the Board and Google did not also address distributing the functionality related to the two applications over the plurality of servers, Red Br. at 12, that is not so. When analyzing another claim, the Board specifically addressed, and rejected, Hammond’s arguments addressing these two limitations that distribute two applications across two application servers. Appx81-82 (citing Hammond’s arguments at Appx860-861 (“PO Resp. 50-51”), which address “Elements [14a]-[14d],” Appx860). Then, the Board credited Google’s expert, Mr. Stuart Lipoff, and found that the combination of the Gilmore and Creamer prior art references demonstrated that it was “well known,” “obvious,” and “desirable” to “host each of [the prior art] applications on separate servers (each executing its own application).” Appx82 (quotations omitted). Specifically, the Board found that:

> Petitioner contends that “[d]istributing software applications across multiple servers was well known to the artisan,” and that implementing multiple servers in

> Gilmore's system "would merely combine known elements to achieve an expected result." [Appx563-564] (citing [Appx2276-2277] ¶¶ 247-251). We agree with Petitioner, and credit Mr. Lipoff's testimony, that an ordinarily skilled artisan ***"would have found it obvious to host each of" Gilmore's applications "on separate servers (each executing its own 'application'),"*** [Appx561], especially given that Creamer teaches that a distributed server system is an alternative to a "stand-alone solution contained within a single server," [Appx1795-1796] ¶ 25; *see also* [Appx2274-2275] ¶ 242. We also credit and rely on Mr. Lipoff's testimony that ***distributing Gilmore's applications over a plurality of servers would have been desirable***, because such a distributed system "would provide a more robust system that is less susceptible to software crashes and allow the gateway to serve a greater number of concurrent users." [Appx2275] ¶ 244; *see also* [Appx562]. . . . Moreover, ***as Petitioner contends and Patent Owner does not contest, distributing software applications across multiple servers was well known before the '816 patent and would have required only ordinary skill to implement***. [Appx563-564]; [Appx2276-2277] ¶¶ 247–251.

Appx82-83 (emphases added); *see also* Appx78 n.17 (noting the relationship between the analysis at Appx81-84 ("§ III.G") and "[l]imitations 14a-14d"). Thus, the Board found that the "differences" Hammond relies on here—distributing the two applications over two servers—were known.

The Board also credited Mr. Lipoff's testimony about the limitations of claim 14 that Hammond now alleges materially alter the question of patentability. Appx82-84 (citing Appx2273-2277 ¶¶ 242, 244, 247-251 (Lipoff declaration addressing elements [14c] & [14d])). Analyzing these limitations, Mr. Lipoff testified that

separating the functionality of the two different applications across two different application servers was routine and conventional. Specifically, Mr. Lipoff testified that:

- "a skilled artisan would have found it obvious to ***host each of the applications 208a-f of gateway 108/208 on separate servers (each executing its own 'application')***, ***since Creamer teaches such a one-to-one application/server implementation*** as an alternative to a 'stand-alone solution contained within a single server'. . . ." Appx2274 ¶ 242 (emphasis added);
- "a skilled artisan would have been motivated to ***distribute the functional applications 208a-f of Gilmore's gateway 108/208 over a plurality of servers, thereby allowing each server to specialize in a particular function***, since this would provide a more robust system that is less susceptible to software crashes and allow the gateway to serve a greater number of concurrent users." Appx2275 ¶ 244 (emphasis added);
- "a skilled artisan would have been motivated to use multiple servers connected by "second communication links," e.g. internal networks, to improve the response quality and time by distributing processing loads or operations among multiple servers." Appx2276 ¶ 246; and

- "***[d]istributing software applications across multiple servers was well-known*** to a skilled artisan. ***Dhara teaches assigning two of Gilmore's application server functions*** (text-to-speech and ASR) ***to different servers***." Appx2276 ¶¶ 247-48 (emphases added); *see also* Appx2276-2277 ¶¶ 249-51.

The Board determined, and the evidence shows, that this minor difference between the two claims—distributing the two applications over two different servers instead of one or more—was well known.

### 3. Analogous case law strongly supports applying issue preclusion based on the Board's findings.

The difference between the claims—which the Board's found was obvious based on the prior art—does not materially alter the question of patentability under the Court's case law. Specifically, "[c]omplete identity of claims is not required to satisfy the identity-of-issues requirement for claim preclusion," and "'[i]f the differences between the unadjudicated patent claims and the adjudicated patent claims do not materially alter the question of invalidity, collateral estoppel applies.'" *Soverain Software*, 778 F.3d at 1319 (quoting *Ohio Willow Wood*, 735 F.3d at 1342). Put another way, collateral estoppel applies if the additional limitation in the surviving claim is not "patentably significant in view of the obviousness determination regarding the claims of the [adjudicated] patent." *Ohio Willow Wood*, 735 F.3d at 1343.

The Court's opinions in *Soverain Software* and *Ohio Willow Wood* are directly on point. In *Soverain Software*, the unadjudicated claim required "transmitting a hypertext statement over the Internet," which was not required in the adjudicated claims. *Soverain Software*, 778 F.3d at 1319. The Court determined that this additional limitation "d[id] not materially alter the question of validity" of the unadjudicated claim because "[t]he use of hypertext to [perform the limitations of the hypertext statement claims] was a routine incorporation of Internet technology into existing processes." *Id.* at 1319-20 (quotations omitted). The Court determined that "the routine incorporation of Internet technology in [the unadjudicated claim] does not change the invalidity analysis." *Id.* at 1320. Likewise, here, distributing two applications over two servers—which the Board found to be known, obvious, and desirable—does not alter the invalidity analysis.

Similarly, in *Ohio Willow Wood*, the unadjudicated claim included an additional limitation requiring a "block copolymer gel," that was narrower than the adjudicated claim, which more generally recited a "polymeric" gel. *Ohio Willow Wood*, 735 F.3d at 1343. The Court nonetheless affirmed the trial court's finding of collateral estoppel because the party opposing collateral estoppel "ha[d] not provided any explanation regarding ***how*** the 'block copolymer' limitation is patentably significant in view of the obviousness determination regarding" the claim requiring only a "polymeric" gel. *Id.* Likewise, Hammond only offers a facial

objection that the claims are different and that the prior art does not teach the claimed limitations. Red Br. at 12-13. But Hammond does not explain ***how*** this is so, nor does it explain how it alters the patentability analysis. *Id.* Hammond instead asserts, without explanation, that "Creamer does not disclose these additional limitations." *Id.* at 12. But as explained, the Board's findings and supporting evidence demonstrate that the prior art does render obvious these limitations. The case for collateral estoppel is even clearer here than in *Ohio Willow Wood*.

The decisions by the Court of Federal Claims in *Westwood* and *Bourns*, which have been relied on by this Court, and which Hammond also cites, Red Br. at 16-17, 20, reached similar conclusions when assessing alleged differences between adjudicated and unadjudicated claims. In *Bourns*, the court applied collateral estoppel based on its determination that "the differences between the adjudicated and unadjudicated claims relate only to things known in the art." 537 F.2d at 493. Specifically, the unadjudicated claims differed from the adjudicated claims in that they required either "hollow rivets in the mounting holes to secure the cover to the base" or "cooperation of the cover with the slider to restrain the slide from rotation." *Id.* These features were "known in the art," so the court applied collateral estoppel. *Id.* at 493-95.

Likewise, in *Westwood*, the court applied collateral estoppel despite numerous differences between the unadjudicated and adjudicated claims. *See Westwood*

*Chem., Inc. v. United States*, 525 F.2d 1367, 1375-79 (Ct. Cl. 1975). The court determined that these "differences d[id] not distinguish the claim from the prior art," and thus did not defeat a finding of collateral estoppel. *Id.* at 1377. Likewise, the alleged difference that Hammond points to—distributing two applications over two servers—does not materially alter the question of patentability because the Board determined this was known in the prior art.

The Board's decision in *SK Hynix*, which Hammond cites—Red Br. 13-14—is not a precedential Board decision and is therefore not binding on the Board, let alone this Court. It is also distinguishable. In *SK Hynix*, unadjudicated claim 2 survived a collateral estoppel challenge because it contained another limitation that was neither in any adjudicated claim nor disclosed in the prior art. *SK Hynix Inc. v. Netlist, Inc.*, No. IPR2017-00561, 2018 WL 3326674, at *5 (P.T.A.B. July 5, 2018); *see also id.* at *8-9 (finding that "the Petition fails to provide additional prior art disclosures" that teach claim 2's limitations). The Board found that this additional limitation "materially alter[ed] the question of patentability." *Id.* at *5. In contrast, here, the Board found that the additional limitations on which Hammond relies were known in the art. Thus, they do not materially alter the question of patentability.

#### 4. The '816 patent describes the claimed "applications" and "application servers" in a conventional manner.

The '816 patent itself confirms the weakness of Hammond's focus on distributing applications over different application servers because the patent

describes both an "application" and an "application server" in generic terms. The '816 patent explains that, "[a]s used throughout this document, the term 'application' refers to functionality that is capable of facilitating the ability to collect information from and/or present information to one or more clients 18 or users of system 10." Appx118 at 4:45-49. It explains that an application can include simply "a series of queries requesting information from and/or presenting information to a user of client 18." Appx118 at 4:50-52. And it explains that an application "may comprise, for example, software, firmware, code, portions of code, a program, a web-page, information compilations, and/or a combination of these or any other types of utilities." Appx118 at 4:56-59. Noting the '816 patent's broad description, the Board construed "application" to be "functionality that is capable of facilitating the ability to collect information from, and/or present information to, one or more client devices or users," Appx27-28, which Hammond does not challenge.

Likewise, the '816 patent explains that "application server 24 may include one or more software and/or firmware modules. In various embodiments, application server 24 could comprise, for example, one or more software engines, one or more memory modules, and/or one or more speech recognition modules . . . ." Appx122 at 12:50-55. It likewise explains that the application server includes a processor and a memory, that the processor "can comprise any computer processor," and that the memory "may include any hardware, software, firmware, or combination thereof

operable to store and facilitate retrieval of one or more applications and/or information." Appx122-123 at 12:59-13:9.

It strains credulity for Hammond to argue that the limitations requiring distributing two applications over two application servers materially alter the question of patentability. The patent itself describes those terms so broadly as to encompass almost any combination of computer elements, and the Board, supported by expert testimony, found that these limitations were known and routine to those skilled in the art.

### B. Google applied the correct legal framework and addressed all claim limitations in showing that the claims are substantially similar.

Despite Google providing a claim chart and analysis explaining how "[e]ach recitation in claim 18 of the '816 patent has a corresponding recitation in claim 18 of the '483 patent," Blue Br. at 11-15, 28-33, Hammond argues that Google's opening brief did not address the claims as a whole and instead "[f]ocus[ed] [o]nly [o]n the 'request for processing' limitation," Red Br. at 16, 19. Not only is Hammond's argument misguided, it is also toothless because it simply repeats its allegations regarding the same limitations discussed in the previous section. *See* Red Br. at 18.

Google's opening brief addressed every limitation of unadjudicated claims 14-19 of the '816 patent. It included a chart and analysis comparing each limitation

of claims 14 and 18 of the ’816 patent to corresponding limitations of claims 10, 17, and 18 the ’483 patent. Blue Br. at 11-15, 28-33. And it included additional analysis comparing the remaining limitations of claims 15-17 and 19 to adjudicated claims. Blue Br. at 41-44. Most of these limitations are substantively similar across the two patents, as the chart shows, and thus nothing more was needed. *See* Blue Br. at 12-14. Even the part of *Westwood* that Hammond quotes explains that “the most convenient way to approach a determination of these issues is . . . to compare the litigated and nonlitigated claims.” *Westwood*, 525 F.2d at 1375; Red. Br. at 17. That is precisely what Google did, charting and describing how “[e]ach recitation in claim 18 of the ’816 patent has a corresponding recitation in claim 18 of the ’483 patent.” Blue Br. at 14. If anything, Google’s chart-wise comparison is more detailed than the analysis in any of *Ohio Willow Wood*, *Soverain Software*, *Westwood*, or *Bourns*.

Further, Hammond undermines its own argument because the only alleged claim differences it identifies are the “plurality of application servers” limitations. Red Br. at 19. As detailed above and in Google’s opening brief, the Board determined that these limitations were known in the art, and thus they do not materially alter the question of patentability. *See supra* Section I.A; Blue Br. at 10, 14, 18, 30-31 & n.2. Hammond does not identify any other differences in the claims.

Hammond’s critique that Google’s opening brief “focuses on” the “request for processing” limitations, Red Br. at 8, 19, is also misplaced. As explained above,

Google addressed every limitation of the unadjudicated claims. Google did, however, address the "request for processing" limitations in detail, and for good reason: they underpinned the Board's determination that the claims were patentable. Blue Br. at 3 (citing Appx79-81). Based on the Board's decision, it made sense for Google to include additional analysis for these elements, particularly because the Board previously rejected Google's collateral estoppel argument without explanation. Appx107-108.

But Google's discussion of the "request for processing" limitations does not change the fact that Google also addressed every limitation of the unadjudicated claims. For example, Google addressed the "plurality of application servers" limitations in its chart and in additional analysis, noted that the Board found these limitations to be present in the prior art, and cited to precisely the same analysis from the Board that Google cites in this reply brief. *E.g.*, Blue Br. at 30 (citing Appx81-84).

Thus, the record disproves Hammond's complaint that Google "completely ignores the additional, meaningful differences between the claims." Red Br. at 19. The only "differences" Hammond points to are the "plurality of application servers" limitations, which the Board already found were known in the art and which Google addressed in its opening brief.

## II. Claim 18 Is Invalid Based on the Board's Undisputed Findings Regarding Substantially Similar Claim 1 in the Same IPR

Google's opening brief presented a second, independent reason for reversing the Board's decision: the Board's conclusion that claim 18 is not unpatentable based on the "request for processing service" limitations is inconsistent with its findings that the corresponding limitations in claim 1 would have been obvious. Blue Br. at 35-39; *see also id.* at 8-11. The claim 18 analysis in Google's IPR petition expressly pointed to Dodrill for both the first and second "request for processing service" limitations in claim 1, and the Board erred by limiting its consideration of Google's Dodrill-based arguments to only the second "request for processing service" limitation in claim 18. Blue Br. at 37-38. Despite conceding it was a "close call," the Board narrowly parsed Google's petition to create an irreconcilable result: claim 1's "request for processing service" limitations are unpatentable based on a combination of Gilmore and Dodrill, but the same limitations in claim 18 are not. Blue Br. at 35-36. Hammond's brief responds with a series of nonresponsive arguments that do not address Google's position.

First, Google did not argue, as Hammond contends, that the Board should have ignored the ground it relied on for claim 14 (Gilmore and Creamer) and applied the ground it relied on for dependent claim 18 (Gilmore, Creamer, and Dodrill) to claim 14. Red Br. at 21-22. Instead, Google argued that the Board's decision cannot consistently find claim 18 patentable (which was undisputedly challenged using a

combination including Gilmore and Dodrill) based on the same limitations that the Board found were disclosed by the combination of Gilmore and Dodrill in the context of claim 1. Blue Br. at 35-39. Hammond's reliance on quotations from *Sirona Dental Systems GmbH v. Institut Straumann AG*, 892 F.3d 1349 (Fed. Cir. 2018) is misplaced because Google is not seeking "'to deviate from the grounds in the petition.'" Red. Br. at 21 (quoting *Sirona*, 892 F.3d at 1356).

Second, contrary to Hammond's allegations, Google is not asking to "re-write Google's Petition in the name of 'consistency.'" Red Br. at 22. Instead, as Google explained, its petition expressly cited to its analysis of both "request for processing service" limitations in claim 1 (limitations [1h] and [1i]) when analyzing the "request for processing service" limitations of claim 18 (and its base claim 14). Blue Br. at 35; Appx565 (citing to claim elements [1h]-[1i] in analysis of claim 14, which appears at Appx543-548); Appx568 (same for claim 18). The Board erred in its analysis of claim 18 by failing to consider Google's analysis for both limitations, instead crediting only the analysis for the second limitation. Blue Br. at 36 (citing *In re Lee*, 277 F.3d 1338, 1344 (Fed. Cir. 2002) ("Omission of a relevant factor required by precedent is both legal error and arbitrary agency action.")).

This error is particularly problematic because the two "request for processing service" limitations are intertwined. Specifically, the second limitation (which appears in claim 18) further defines the "request for processing service" introduced

in the first limitation (which appears in claim 14), by explaining that it "comprises an instruction to present a user of the at least one communication device voice data or audio data." Appx124 at 15:21-24 (claim 18); Appx124 at 15:5-7 (claim 14).

Third, Hammond argues that the surviving claims should still be found patentable based on the same "plurality of application servers" limitations that Hammond relies on when contesting Google's collateral estoppel arguments. Red Br. at 23. But as explained in detail above, the Board found that those limitations were in the prior art, so this is not a valid basis to find the claims patentable. *See supra* Section I.A. Hammond does not point to any other limitations in claim 18 (or its base claim 14) that render it patentable over the prior art. The Board's decision regarding claim 18 should therefore also be reversed as inconsistent with its decision regarding claim 1.

## III. Hammond Does Not Dispute That If Claim 18 Is Invalid, Then Claims 14-17 and 19 Are Also Invalid

Google explained that if claim 18 is invalid, then claim 14 is also invalid based on the principle articulated in *Callaway Golf* and applied in numerous subsequent Court decisions that "'[a] broader independent claim cannot be nonobvious where a dependent claim stemming from that independent claim is invalid for obviousness.'" Blue Br. at 39-40 (quoting *Callaway Golf Co. v. Acushnet Co.*, 576 F.3d 1331, 1344 (Fed. Cir. 2009) and collecting cases). Hammond does not challenge the underlying logic of *Callaway Golf*. Instead, Hammond argues only that *Callaway Golf* does not

apply because "Google failed to meet its burden with respect to claim 14" and because Google failed to show that claim 18 is invalid based on collateral estoppel. Red Br. at 23-24. But Google's entire point is different and simple: ***if*** the Court agrees with Google that claim 18 is invalid, ***then*** claim 14 must also be invalid, because it is broader. Hammond does not address or dispute that point.

Google also explained that the record unambiguously supports finding that the additional limitations in dependent claims 15-17 and 19 would have been obvious. Blue Br. at 41-44. Hammond does not challenge these positions. Instead, Hammond only propounds the unremarkable position that if the Court does not find independent claim 14 unpatentable, then dependent claims 15-19 are also not unpatentable. Red Br. at 24-25. Again, this is not responsive to Google's position in its opening brief.

Thus, if the Court agrees with Google that claim 18 is unpatentable based on either: (a) collateral estoppel stemming from the related patents; or (b) the Board's findings regarding claim 1 of the '816 patent, then it should also reverse the Board's decision regarding independent claim 14 and dependent claims 15-17 and 19.

## CONCLUSION

Google respectfully requests that the Court reverse the Board's decision and hold that claims 14-19 are unpatentable.

Date: April 11, 2022

Respectfully submitted,

/s/ Erika H. Arner
Erika H. Arner
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
901 NEW YORK AVENUE, NW
WASHINGTON, DC 20001-4413
(202) 408-4000
*Counsel for Appellant Google LLC*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Federal Circuit Rule 32(a) or Federal Circuit Rule 28.1:

This brief contains 4,971 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Circuit Rule 28.1 and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6):

This brief has been prepared using a proportionally-spaced typeface in 14 point font, Times New Roman.

| | |
|---|---|
| Erika H. Arner | /s/ Erika H. Arner |
| Name of Counsel | Signature of Counsel |


| | |
|---|---|
| Firm: | Finnegan, Henderson, Farabow, Garrett & Dunner, LLP |
| Address: | 901 New York Avenue, NW |
| City, State, and Zip: | Washington, DC 20001 |
| Telephone: | 202-408-4000 |
| Fax #: | 202-408-4400 |
| E-Mail address: | erika.arner@finnegan.com |